[No. 4744.]

HARLAN v. THE PEOPLE.

1.  **Assault With Intent to Rape—Force—Evidence.**
    To constitute the crime of assault with intent to commit rape,

the defendant must intend to overcome the resistance of the woman by such force as may be necessary to accomplish his purpose, but it is not necessary that he shall have used the force. If there is sufficient evidence of force from which the jury can justly find that the defendant intended to overcome the resistance of the woman by the necessary force, it will sustain a verdict of guilty.

2.    Rape—Force—Administering Chloroform—Assault.

One who has carnal knowledge of a woman while in a state of stupefaction from the use of chloroform is guilty of rape. And although at the time of administering the chloroform the defendant had no unlawful purpose, yet if he afterwards formed the design and purpose to have sexual intercourse with her while she was under the influence of chloroform and was unable to remonstrate or resist, and while harboring such intention attempted to have sexual intercourse with her, he was guilty of assault with intent to commit rape, although the assault was one without violence, and although he desisted before accomplishing his purpose.

3.    Assault With Intent to Commit Rape—Evidence.

Evidence examined and held sufficient to sustain a conviction for assault with intent to commit rape.

4.    Instructions—Non-direction.

Where the instructions given are not erroneous, the fact that they do not cover every possible phase of the case is not reversible error if no instructions were offered covering such omitted phases.

*Error to the District Court of Larimer County.*

Mr. L. R. RHODES and Mr. PAUL W. LEE, for plaintiff in error.

Mr. N. C. MILLER, attorney general, for the people.

Mr. JUSTICE STEELE delivered the opinion of the court.

Defendant was convicted of an assault to commit rape, and was sentenced to a term in the penitentiary. He comes here by writ of error and says that the court should have directed a verdict finding him not guilty, because of the insufficiency of the evidence,

and that the court erred in the giving of instructions.

The defendant, a dentist, had been employed by the prosecuting witness to make her a set of false teeth. At the time her natural teeth were extracted the defendant administered a local anæsthetic. A few days thereafter a protuberance was discovered in her mouth, and she returned to the dentist's office. At this time the defendant administered chloroform. Three weeks later she again visited the defendant's office for the purpose of having an impression of her mouth taken. At this time another protuberance was discovered. The defendant informed the witness that it should be removed, and when asked if a local anæsthetic could not be administered, said that she had better take chloroform. She objected to taking chloroform, stating that it made her sick. Thereupon, according to her statement, when she attempted to get out of the chair he pushed her back into the chair, threw a cloth over her face and saturated it with chloroform. Her testimony was:

"He said I would have to take chloroform. I said I didn't want to take chloroform because it made me so sick and took so long to get over it. I objected to taking it and started to get out of the chair. He pushed me back in the chair, threw a cloth over my face and poured chloroform on it so that it ran through the cloth on to my face and neck and burned them, and on the ribbons I had on, and it became so strong that I could not catch by breath. He said, 'I have given you too much,' and stopped until I caught my breath, and then poured some more on. He laid me on the lounge, then lifted up my hands to see if I was still conscious. He then spoke to me. I heard him speak, but I could not answer him. Then I heard him go to the door and turn the key in the lock. Then I lost consciousness and knew nothing more until I heard my little girl crying.''

Continuing, she said: "I noticed my clothes were all unfastened, my belt was fastened, my corsets, though unfastened, were in place. I had put my pocketbook in my corset, and I thought of that when I saw my clothes unfastened, and I felt that it wasn't there. I could have felt it against my person if it had been there; so I know it wasn't there. When he came back I asked him where it was. He said, 'We will find it.' He sat on the side of the lounge and asked me if I had a husband. I said, 'Yes.' He says, 'He don't treat you very well, does he?' I says, 'Yes, he does.' He says, 'You are smart enough not to tell about this?' I said, 'No.' Then he walked around the room and came and stood by the side of the lounge and attempted to pull up my dress and pinched my legs. I said, 'You put my dress down.' I tried to get up, but was too weak, and he pushed me back on the lounge. I looked at him and saw his pantaloons were all unfastened. After staying there for a time until I was partially recovered, he got up and walked around the room two or three times. He left my baby in the room with me when he sent the little girl out. He said, 'Can't we send this little girl out of the room?' I said, 'No.' Then he stood her down on the opposite side of the lounge and told me to get over, and attempted to lie down. Instead of doing that, I got up and began fastening my clothes. While I was doing that the baby was standing by my side crying. He said, 'Perhaps she wants to go to the closet.' He unlocked the door and let me go out. I didn't go to the closet, but started up the hall to the reception room door. I was in the operating room. I went to the reception room and saw Eleanor and a man and woman, strangers to me. Eleanor had been crying. I staggered across the room, I could scarcely walk, and dropped into a chair. I sat there a moment,

and the doctor unlocked the door between the office and the next room, and came in. He said, 'This is my chloroform patient.' ''

The defendant denies he assaulted the prosecuting witness, and says that all he did at the time in question he did in pursuit of his occupation as a dentist; that he unloosed the woman's dress for the purpose of enabling her to breathe more freely, that he felt of her limbs to ascertain the condition of her circulation, but that he made no assault, and did not solicit sexual intercourse. Counsel for the defendant say that if we were to accept all the statements of the prosecuting witness as true, that a case of assault with intent to rape has not been shown; that at best there was only solicitation to have sexual intercourse. He assumes that the chloroform was administered for a proper purpose, and that there is no evidence showing that the woman was taken advantage of while unconscious. That the evidence of the woman concerning the conduct of the defendant while she was recovering from the effects of the chloroform does not show an intent to commit rape. He says that all the acts of the defendant can be explained upon the hypothesis of his innocence, and that we should discharge him. Our attention has been directed to many cases where appellate courts have set aside judgments of conviction where the evidence, in the opinion of the appellate tribunal, failed to show an intent to commit the crime of rape. It is peculiarly the province of the jury to determine the intent with which an act is committed. One of the most important elements in determining the question of intent is the character of the defendant. His character may be portrayed in many ways; and the jury, after seeing and hearing the defendant, is a very much better judge than we are of the intent with which his act was committed. In the cases cited the element of

force was entirely wanting. At best there was but a technical assault accompanying the solicitations and blandishments of a seducer. It will be conceded that one is not guilty of an assault to commit rape unless he intends to overcome the resistance of the woman by such force as may be necessary to accomplish his purpose. But it is not necessary that he shall have used the force. He may change his mind; he may fear exposure; there may be danger of an alarm. All that is necessary to sustain a verdict is that there should be sufficient evidence of force from which the jury can justly find that the defendant intended to overcome the resistance of the woman by the necessary force. Rape is the carnal knowledge of a female forcibly and against her will.—Session Laws of 1895, page 155. A defendant is guilty of rape if he has carnal knowledge of a female without her consent. And it is uniformly held that one who carnally knows a woman while she is in a state of stupefaction, is guilty of rape. Her power of resistance may be removed without physical force or violence, and where it is so removed carnal knowledge is rape. Only such force as is necessary to overcome the woman's resistance is required, and the degree of force required depends upon the circumstances of each case. A very little force would be required to overcome the resistance of a woman who is recovering from the effects of chloroform, while a great deal might be required to remove the resistance of a robust and active woman. This being so, the verdict should not be disturbed except in cases where there is a total failure of proof. In this case the jury might well have found that the chloroform was administered for the purpose of so stupefying the witness as to enable him to accomplish his purpose without resistance; or it may have accepted his statement that the chloroform was administered for a lawful pur-

pose, but that he formed the intention of having sexual intercourse after he had placed her in a condition where she could offer little or no resistance, and that he intended to overcome such resistance as she offered. And there can be no doubt that if the defendant had, at the time he administered chloroform, no unlawful purpose, yet if he afterwards formed the design and purpose to have sexual intercourse with her while she was under the influence of chloroform, and while she was in such a condition from the effects of the chloroform that she was unable to remonstrate or resist, and that while harboring such intention he undertook to have sexual intercourse with her, he was guilty of an assault with intent to commit rape, although the assault was one without violence, and although he desisted before accomplishing his purpose.

We cannot say, after reading the transcript, that there was not sufficient evidence to warrant the jury in finding the defendant guilty as charged. When the defendant administered chloroform to the prosecuting witness over her objection, he committed an assault, and it was for the jury to determine from all the evidence with what intent the act was committed.

The defendant objected to the giving of certain of the instructions, but no instruction was offered to be given in his behalf. The instructions given are not erroneous. They do not cover every possible phase of the case; but the defendant, if he desired other instructions, should have offered them, and we have frequently held that mere non-direction is not reversible error.—*Brown v. People,* 20 Colo. 161.

The judgment will be affirmed.

*Affirmed.*